UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| PENN ENGINEERING AND MANUFACTURING CORP., <br><br> Plaintiff, <br><br> v. <br><br> DONGGUAN ZHENGMAO PRECISION HARDWARE FACTORY, <br><br> Defendant. | Case No. 2:18-cv-02079-GMN-EJY <br><br> **REPORT AND RECOMMENDATION** <br><br> Re: ECF No. 21 <br> Plaintiff's Renewed Motion for Default Judgment and Permanent Injunction |

Before the Court is Plaintiff Penn Engineering and Manufacturing Corp.'s Renewed Motion for Entry of Default Judgment and Permanent Injunction. ECF No. 21. No response to the Motion was filed.

**I.   BACKGROUND**

   A.   Relevant Facts and History

Plaintiff designs and manufactures fasteners, fastener components, and fastener installation equipment for a variety of industries. On October 29, 2018, Plaintiff filed a Complaint alleging Trademark Infringement, False Designation of Origin, Trademark Counterfeiting under the Lanham Act, and Common Law Trademark Infringement and Unfair Competition Causes of Action against Defendant Dongguan Zhengmao Precision Hardware Factory ("DFP").[1] ECF No. 1.

On November 5, 2018, an executed summons was returned for Defendant. ECF No. 7. Plaintiff alleged that it served a copy of the Summons and Complaint personally on Defendant's

---

[1] This is not the first action for trademark infringement Plaintiff has brought against Defendant. As noted in its Motion, Plaintiff obtained a preliminary injunction and default judgment against Defendant (under a different trade name) for trademark infringement in a prior action before the Court. *See Penn Engineering and Manufacturing Corp. v. Dongguan Fenggang Pinconn Hardware Factory*, Case No. 2:17-cv-02679-RCJ-PAL (D. Nev. 2017). The prior action in the U.S. District Court for the District of Nevada fell on the heels of similar litigation in the Eastern District of Pennsylvania, which resulted in Defendant being held in contempt of court for violating a preliminary injunction prohibiting it from infringing Plaintiff's trademark. *See Penn Eng'g & Mfg. Corp. v. Pemco Hardware, Inc.*, Case No. 2:15-cv-6277-GJP (E.D. Pa. Nov. 23, 2015).

"employee" Bi Xiaobo ("Xiaobo") at the Las Vegas International Fastener Expo. ECF Nos. 7, 11 at 8. On January 2, 2019, the Clerk of Court entered default against Defendant. ECF No. 9.

On June 10, 2020, Plaintiff filed its first Motion for Default Judgment and Permanent Injunction, which it certified was served on Defendant. ECF No. 11 at 21. The Motion was denied without prejudice on February 17, 2021 because the Court found Plaintiff failed to comply with Fed. R. Civ. P. 4's service of process requirements. The Court gave Plaintiff thirty days to properly serve Defendant. ECF No. 13 at 2. On March 17, 2021, Plaintiff filed a Motion seeking leave to serve Defendant by alternative means, which the Court granted "to the extent that Plaintiff shall be permitted to effect service of process on Defendant by electronic mail at the email listed on Defendant's website under the "Contact Us" section on its website." ECF No. 16 at 3. Two days later, Plaintiff certified that it timely served Defendant. ECF No. 17. Plaintiff then filed a Renewed Request for Entry of Default against Defendant, and the Clerk of Court entered default on July 19, 2021. ECF Nos. 18, 20.

The Order granting electronic service gave Defendant until May 7, 2021 to file a responsive pleading. ECF No. 16 at 3. However, as of the date of this Order, Defendant has not appeared in this action and Plaintiff, therefore, renews its Motion for a Default Judgment and Permanent Injunction. Plaintiff asks the Court to enjoin Defendant from engaging in the violations it alleges and to award monetary damages, costs, and attorneys' fees. ECF No. 21.

B.   Plaintiff's Claims

Plaintiff is the owner of U.S. Registration No. 732,947 ("the PEM Mark"), which grants Plaintiff the exclusive right to use the trademark PEM or any colorable imitation. Plaintiff has also registered several additional trademarks for its fastener products (collectively, the "PEM Family of Marks") and claims exclusive rights in numerous other federally-registered and common law marks. *Id.* at 4-9. Included among the Other PEM Marks are the "Pedestal Mark" and the "Dimpled Recess Mark" ("the Two Other Marks), both of which Defendant is accused of counterfeiting. ECF No. 1 ¶ 50.

Plaintiff accuses Defendant of using Plaintiff's trademarks, including the PEM mark, PEM Family of Marks, the Dimpled Recess Mark, and "numerous of the Common Law Marks" without

license or authorization to sell competing fastening products online. *Id*. at 11-12. Further, Plaintiff alleges that Defendant appeared at the 2018 International Fastener Expo in Las Vegas where it sold counterfeit and inferior fastening products under Plaintiff's marks. *Id*. at 12. These products fell below the standards of quality and reliability to which Plaintiff holds its own fasteners. *Id*. Plaintiff argues that Defendant has caused incalculable damage to the value of its trademarks through years' worth of counterfeit sales. ECF No. 21 at 15. Although most of the sales were made to global customers through Defendant's website, Plaintiff argues that Defendant's presence at the Las Vegas Expo supports an intent to sell infringing products to customers within the United States. *Id.*

As a result of these violations, Plaintiff seeks a permanent injunction against Defendant and statutory damages in the amount of $8,000,000 under 15 U.S.C. § 1117(c)(2), which provides for enhanced damages when willful counterfeiting is present. *Id.* at 16.

## II.   DISCUSSION

### A.   The Default Judgment Standard

Rule 55(b) of the Federal Rules of Civil Procedure authorizes the Court to enter default judgment when the Clerk of Court previously entered default based upon a defendant's failure to answer and defend. *OCWEN Loan Servicing, LLC v. Operture, Inc.*, Case No. 17-cv-01026, 2018 WL 1100904, at *1 (D. Nev. February 12, 2018). Here, the summons was returned executed on November 5, 2018. ECF No. 7. Plaintiff properly served Defendant on March 19, 2021, via email (in accordance with the Court's Order granting Alternative Service (ECF No. 16)), and proof of service was filed with the Court on March 22, 2021. ECF No. 17. Defendant has not made an appearance or attempted to respond to Plaintiff's Complaint. The Clerk's Default was entered against Defendant on July 19, 2021. ECF No. 20.

Failure to timely answer a properly served complaint is an appropriate basis upon which entry of default judgment may lie. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986). This, however, does not automatically entitle plaintiff "to a court-ordered judgment." *PepsiCo. Inc. v. Cal. Sec. Cans.*, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002). Although the Court must accept all well-pleaded facts in Plaintiff's Complaint as true, the Court is not required to consider any conclusions of law or facts that fail the well-pleaded standard. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir.

2007). The Court need not accept the facts establishing the amount of damages as true simply based on the pleadings. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

Courts generally disfavor default judgments because "cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Thus, there are seven factors the Court, in its discretion, generally considers when deciding whether to grant default judgment. *Id.* at 1471-72 (citing 6 MOORE'S FEDERAL PRACTICE § 55-05, at 55-24 to 55-26). These factors include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.*[2]

B.  Application of the *Eitel* Factors to this Case

1.  *Factor One – The Possibility of Prejudice to the Plaintiff.*

The Clerk of Court properly entered default against Defendant who failed to appear or respond to Plaintiff's Complaint with which it was served. Plaintiff served the Notice of Default entered by the Clerk of Court as well as the Motion for Default Judgment on Defendant by email at its last known email address on March 19, 2021 (ECF No. 17) and, still, there has been no response from Defendant. Under these circumstances, Plaintiff has no means to litigate its claims against Defendant other than through the present method. Without judicial intervention, Plaintiff will not be able to prevent any further alleged infringement. For this reason, the Court finds the first *Eitel* factor favors entry of default judgment.

2.  *Factors Two, Three, and Five – the Merits of Plaintiff's Substantive Claim, the Sufficiency of the Complaint, and the Possibility of a Question of Material Fact.*

Under the well-pleaded complaint rule, Plaintiff sufficiently states claims for recovery from Defendant. Fed. R. Civ. P. 8. Thus, the third *Eitel* factor favors entry of default judgment.

---

[2] In addition to these seven factors, the Court has the duty to ensure defendants were properly served and are properly before the Court. *DFSB Kollective Co. v. Bourne*, 897 F.Supp.2d 871, 877-78 (N.D. Cal. 2012). Here, as stated, the Court finds that the summons was properly issued, Defendant was properly served, Defendant failed to answer or otherwise respond to the Complaint, personal jurisdiction is properly exercised over Defendant, and that default against Defendant was properly entered by the Clerk of Court.

The merits of Plaintiff's claims as alleged in the Complaint (the second *Eitel* factor), when considered together with the possibility of questions of material fact (the fifth *Eitel* factor), clearly demonstrate (1) federal trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), (2) false designation of origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), (3) trademark counterfeiting in violation of Section 15 U.S.C. § 1114 of the Lanham Act, and (4) common law trademark infringement and unfair competition.

There is no real issue of material fact at play in this case as Defendant has offered nothing to suggest Plaintiff's well and thoroughly pleaded facts lack merit or misrepresent the truth. An examination by the Court of the facts alleged leads the Court to the same conclusion. In sum, there is nothing that warrants denial of Plaintiff's Motion. Instead, these findings militate in favor of granting default judgment in favor of Plaintiff.

> 3. *The Remaining Eitel Elements—the Sum of Money at Stake in the Action, Whether the Default Was Due to Excusable Neglect, and the Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on The Merits—Lead to Granting Plaintiff's Motion.*

The amount at stake, $8,000,000, is significant, and as such would normally weigh against granting default judgment. Under the fourth *Eitel* factor, however, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). Given the evidence of willful infringement in this case, as well as the alleged scope of the infringement, *see* ECF No. 21 at 15, the Court finds default judgment appropriate. There is also no issue of excusable neglect in this case and, while decisions on the merits are favored, Defendant's failure to participate in this litigation, despite substantial opportunity to do so, precludes the opportunity to consider this case through the ordinary course of litigation. The *Eitel* factors as applied to the facts of this case weigh in favor of default judgment, which the Court grants.

C. Plaintiff is Entitled to Monetary and Injunctive Relief

Turning to the issue of damages, Plaintiff asks the Court to grant an injunction (which the Court does below) and money damages of $8,000,000 pursuant to 15 U.S.C. § 1117(c)(2),[3] providing for statutory damages of up to $2,000,000 per counterfeit mark per type of goods where the counterfeit was willful. 15 U.S.C. § 1117(c)(2). In electing to seek statutory damages under § 1117(c)(2), Plaintiff foregoes recovering damages under 15 U.S.C. § 117(a), including Defendant's profits, actual damages, and costs and attorneys' fees. 15 U.S.C. § 1117(c).

Taking Plaintiff's allegations as true, the Court finds evidence of willful trademark infringement. ECF No. 21 at 14, 16, 20. The Complaint alleges that Defendant advertised and sold products containing marks identical to Plaintiff's various trademarks online and at the Las Vegas Expo. ECF No. 1 ¶¶ 51-52, 54-55, 142, 148, 153, 159. Defendant is Plaintiff's direct competitor in the fastener industry and, according to Plaintiff, knew that it was using counterfeit Penn Trademarks. *Id.* Further, Defendant was involved in multiple prior infringement actions brought by Plaintiff resulting in injunctions that Defendant has ignored. *Penn Eng'g & Mfg. Corp. v. Pemco Hardware, Inc.*, Case No. 2:15-cv-6277-GJP (E.D. Pa. Nov. 23, 2015); *Penn Engineering and Manufacturing Corp. v. Dongguan Fenggang Pinconn Hardware Factory*, Case No. 2:17-cv-02679-RCJ-PAL (D. Nev. 2017). The Court finds there is no doubt that Defendant was on notice as to Plaintiff's rights in the Penn Trademarks but continued to use counterfeit marks without authorization in willful disregard of these rights. As such, statutory damages under § 1117(c)(2) are appropriate.

Plaintiff asks for the maximum statutory damages under § 1117(c)(2); that is, $2,000,000 per counterfeit mark per type of goods sold. ECF No. 21 at 19. Plaintiff claims that there are four counterfeit marks the infringement of which gives rise to an award of $2,000,000 each for a total of $8,000,000. *Id.* However, Plaintiff fails to clearly identify the four individual counterfeit marks entitling it to relief and refers to various marks and combinations of marks inconsistently throughout

---

[3] Section 1117(c)(2) states, "if the court finds that the use of the counterfeit mark was willful, [the plaintiff may recover], not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(C)(2).

its briefings.[4] If the Court is to award Plaintiff $2,000,000 per counterfeit mark as requested, it must have a clear understanding of which four marks entitle Plaintiff to relief.

The Court recognizes the importance of statutory damages in trademark infringement cases where the defendant has defaulted, depriving the plaintiff of the information necessary to measure actual damages. *Avnet, Inc. v. Avana Techs. Inc.*, 2014 U. S. Dist. LEXIS 177436, *18 (D. Nev. Dec. 3, 2014). In cases such as this one, where there is evidence of repeated, willful infringement, an award of statutory damages serves to both compensate Plaintiff for its losses and deter would-be counterfeiters, including Defendant. As the Court recognized in a previous Order against Defendant, Defendant's "persistent counterfeiting despite a federal court injunction strongly indicates that a significant deterrent is necessary to stem future infringement." *Penn Eng'g & Mfg. Corp. v. Dongguan Fenggang Pinconn Hardware Factory*, Case No. 2:17-cv-02679-RJC-PAL, 2018 WL 3014794, at *3 (D. Nev. June 15, 2018). Unfortunately, while the Court finds statutory damages appropriate in this case, there is insufficient information before the Court at this time to award such damages.

As to Plaintiff's request for permanent injunctive relief, Plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Oakley, Inc. v. Moda Collection, LLC*, Case No. 8:16-cv-160-JCGx, 2016 WL 7495837, at *2 (C.D. Cal. Sept. 28, 2016) *citing eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Court has discretion whether to grant a permanent injunction and must consider the unique and totality of the circumstances when making this decision. *Id. citing La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 889 (9th Cir. 2014).

---

[4] For example, Plaintiff's Complaint asks for "an award of damages for infringement of the PEM mark, the PEM Family of Marks, the Two Other Marks, and the Common Law Marks" suggesting that these are the four counterfeit marks supporting up to $2,000,000 each in damages. ECF No. 1 at 26. However, the Motion for Default Judgment appears to group the original PEM Mark with the "PEM Family of Marks" and refers to them all collectively (and confusingly) as "the PEM Marks." ECF No 21. at 4. The Motion then goes on to discuss the Pedestal Mark and the Dimpled Recess Mark (referred to at different times as the "Two Other Marks" and "The Other Federal Marks") separately, *id.* at 6-7, giving rise to the inference that Plaintiff means for each of the Pedestal Mark and the Dimpled Recess Mark to count for a separate $2,000,000 award.

Plaintiff demonstrates, to the satisfaction of the Court, that it has suffered irreparable injury resulting from Defendant's infringement on Plaintiff's trademarks, false designation of origin, trademark counterfeiting under the Lanham Act, and unfair competition. Remedies at law may cure some of the harm caused by Defendant's conduct, but the award of such damages will not mitigate damages arising from future infringement on Plaintiff's trademarks. Nor will remedies at law redress damage to Plaintiff's goodwill or reputation.

As to the balance of the equities, Defendant has not responded to Plaintiff's Complaint, Default, or either of two Motions for Default Judgment. Defendant offers nothing to the Court suggesting it is not infringing on Plaintiff's marks. Defendant does not indicate it has or will cease its infringing conduct; indeed, Defendant has continued such conduct in spite of at least two similar injunctive orders against it. And, with respect to the public interest, such interest is best served by protecting trademark rights and the consumers who turn to such marks as indicators of a product's quality and value. The public interest is also served by a permanent injunction that will discourage willful infringement and encourage participation in the legal system established to address federal claims. Because Plaintiff has satisfied all four facts required to demonstrate a permanent injunction is warranted, the Court will grant Plaintiff the injunction it seeks.

### III.  RECOMMENDATIONS

For each and all of the reasons stated above, IT IS HEREBY RECOMMENDED that Plaintiff's Renewed Motion for Default Judgment and Permanent Injunction (ECF No. 21) be GRANTED against Defendant.

IT IS FURTHER RECOMMENDED that a permanent injunction issue enjoining:

- Defendant, and anyone acting in concert with them or on their respective behalves, including, but not limited to their respective employees, agents, officers, directors, attorney's successors, affiliates, subsidiaries, and assigns (collectively, for purposes of these Recommendations, the "Defendant Representatives"), from infringing Plaintiff's trademarks, engaging in any activity that infringes on Plaintiff's trademark rights or engaging in any activity constituting unfair competition with Plaintiff;

- any third party from the manufacture, distribution, providing, selling, marketing, advertising or promoting fasteners bearing any of Plaintiff's Trade Dress or any other mark that is a copy, counterfeit, simulation, confusingly similar variation or colorable imitation of Plaintiff's marks;

- Defendant and Defendant Representatives from making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that Defendant's fasteners are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff;

- Defendant and Defendant Representatives from using or authorizing any third party to use in connection with any business, goods or services any false description, false representation or false designation of origin, or any marks, names, words, symbols, devices or trade dress that falsely associates such business, goods and/or services with Plaintiff or tend to do so;

- Defendant and Defendant Representatives from registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the Trade Dress or any other mark that infringes or is likely to be confused with Plaintiff's Trade Dress, any goods or services of Plaintiff, or Plaintiff as their source; or

- aiding, assisting, or abetting any other individual or entity in doing any act prohibited by any of the above.

IT IS FURTHER RECOMMENDED that Plaintiff's request for damages be DENIED without prejudice and that Plaintiff be allowed to submit a supplemental memorandum that establishes each of the four counterfeit marks for which they seek a total award of $8,000,000 in statutory damages under 15 U.S.C. § 1117(c)(2).

DATED this 18th day of October, 2021.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. In 1985, the Supreme Court held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). The Ninth Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).